**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FINISHLINE INDUSTRIES, INC., formerly B–Y Manufacturing, Inc., Respondent.**

**No. 71–1207.**

United States Court of Appeals, Ninth Circuit.

Dec. 3, 1971.

Stanley Zirkin, Asst. Gen. Counsel, NLRB, Washington, D. C. (argued), Arnold Ordman, Gen. Counsel, Dominick Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C., Ralph E. Kennedy, Reg. Director, NLRB, Los Angeles, Cal., for petitioner.

A. L. Hamilton (argued), Los Angeles, Cal., Henry B. Ely, Los Angeles, Cal., for respondent.

Before DUNIWAY and CHOY, Circuit Judges, and WHELAN, District Judge.*

DUNIWAY, Circuit Judge:

The National Labor Relations Board seeks enforcement of its orders, 166 NLRB 838 and 181 NLRB 118, against respondent Finishline Industries, Inc. The Board found that respondent had violated 29 U.S.C. § 158(a) (1) and (2) by bargaining and contracting with one union (Carpenters) while its employees were represented by another union (Sheet Metal Workers, Local 108) and had violated 29 U.S.C. § 158(a) (5) by refusing to abide by a contract entered into on January 11, 1966 with Local 108. The Board's order required respondent to cease its unfair labor practices, to recognize Local 108 as the exclusive bargain-ing agent of the employees in question, and to "make whole employees for any losses suffered by reason of [respond-ent's] failure to honor the [January 11] agreement." In a supplemental proceed-ing, the Board ordered back pay to cer-tain employees. We deny the Board's application for enforcement insofar as its decision rests on the validity of the January 11 agreement; in other re-spects, we enforce.

1. *The contract with the Carpenters Union.*

■ Respondent manufactures and in-stalls overhead doors. In March 1965 and thereafter, its employees were repre-sented by Sheet Metal Workers Local 108, with which it had a collective bar-gaining agreement. The agreement ex-pired on July 1, 1965, but respondent continued to pay the union scale, includ-ing an increase effective July 1. In August, respondent expanded into over-head door installations in industrial buildings. Informed that this work was within the jurisdiction of the Carpenters Union, respondent approached that union and on November 16 signed a contact with it to cover such work. The four in-stallation employees affected were told by respondent to withdraw from Local 108 and to join the Carpenters if they wanted continued employment with re-spondent. Two of the four joined the Carpenters, being reimbursed by re-spondent for their expenses in switching membership. Thereafter, respondent persisted in refusing to deal with Local 108 as representative of those of its employees who installed doors in indus-trial buildings, treating them as repre-sented by the Carpenters and paying the Carpenters' scale.

This was a direct violation of § 158 (a) (1) and (2). An employer has no more right to shove his employees into a bona fide outside union that does not represent them than it has to shove them into a company union. Insofar as the

* Honorable Francis C. Whelan, United States District Judge, Central District of California, sitting by designation.

Board's order rests on this violation, it will be enforced.

### 2. The contract with Local 108.

On August 31, 1965, Local 108 submitted copies of a new contract, effective July 1, for respondent's signature. It was accompanied by a letter indicating that three copies of the agreement were to be signed by the respondent and one copy "retained for your personal use and convenience until such time as the officially signed contract by all parties involved is returned to you." In November, shortly after respondent signed a contract with the Carpenters, representatives of both Local 108 and the Carpenters met with respondent. At that meeting Local 108 claimed jurisdiction over the installation of service station doors, while agreeing that the Carpenters had jurisdiction over factory doors. On December 9 respondent's lawyer wrote to Local 108, stating that respondent would sign an agreement so long as it was understood that the installation of overhead doors would be assigned to the proper craft—the Carpenters. Respondent signed the contract on January 11, 1966, and forwarded three copies to the union for signing. The union did not sign the contract, and at a meeting with respondent on January 17 refused to accept respondent's proposal that Sheet Metal Workers continue to install doors on service stations and that Carpenters perform industrial installations. The union also rejected respondent's suggestion that the issue be submitted to the grievance procedure specified in the contract. On January 18, the union stated that, under the circumstances, a contract between Local 108 and respondent would not be signed by the union. The union informed respondent on January 20 that it would strike unless the two installers who withdrew from Local 108 to join the Carpenters rejoined Local 108. Respondent again offered to submit the dispute to the grievance procedure under the contract if the union would sign it. This offer was rejected by the union and a strike began on January 24.

The foregoing facts are not disputed. The trial examiner found that respondent signed the contract on the understanding that it not apply to the overhead door installers whose function fell within the jurisdiction of the Carpenters. The Board rejected this finding. It relied entirely on the fact that respondent's letter of January 11, which accompanied the signed contract sent to Local 108, did not contain such a condition. This, said the Board, was an acceptance of Local 108's offer, and a contract came into being on the terms of the written offer.

Whether the Board's decision be considered a finding of fact or a conclusion of law, it is not "supported by substantial evidence on the record considered as a whole" (29 U.S.C. § 160(e)). Each party knew the other's position: respondent was insisting that the contract should not cover the employees whose work fell within the jurisdiction of the Carpenters; Local 108 was insisting that it cover them. Local 108 was not misled by its receipt of the contract without the accompanying condition. The best evidence of this is what it did. Instead of signing and returning the contract and thereafter treating it as binding, Local 108 did not sign. Rather, it continued to argue and when the argument was unsuccessful, it refused to sign and called a strike.

We do not here repudiate the general rule of contract law upon which the Board relied, that an unconditional written acceptance of a written offer creates a binding contract. We find it inapplicable because here Local 108 knew that the acceptance, while unconditional in form, was conditional in fact, and acted accordingly. N. L. R. B. v. Strong, 1969, 393 U.S. 357, 89 S.Ct. 541, 21 L.Ed. 2d 546, on which the Board relies here, is not in point. There the parties had in fact agreed, but one party refused to sign; here they had not agreed.

Insofar as the Board's order rests upon its finding that there was a contract

between respondent and Local 108, we decline to enforce it.

Judgment will be settled under Rule 19, F.R.App.P.