**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CEN–VI–RO PIPE CORPORATION et al., Respondents.**

No. 26307.

United States Court of Appeals, Ninth Circuit.

March 14, 1972.

Leonard Wagman (argued), Lynn D. Poole, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D.C., Roy O. Hoffman, Director, Region 20, NLRB, San Francisco, Cal., for petitioner.

Stewart Weinberg (argued), Victor J. Van Bourg, San Francisco, Cal., Stanley

E. Tobin, of Hill, Farrer & Burrill, Los Angeles, Cal., for respondent.

Before HAMLEY, DUNIWAY and KILKENNY, Circuit Judges.

DUNIWAY, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its order (180 NLRB 69), issued against Cen-Vi-Ro Pipe Corporation, Northern California District Council of Laborers, and Construction and General Laborers Union Local No. 73, AFL–CIO. The Board concluded that the Company and the Union had violated Sections 8(a) (3), (2) and (1), and 8(b) (2) and (1) (A) of the National Labor Relations Act, as amended, 29 U.S.C. § 158(a) and (b) respectively, by entering into and carrying out a collective bargaining agreement which contains a union security clause, when the Union did not represent an uncoerced majority of the Company's employees. The Board also found violations of Sections 8(a) (3) and (1) and 8(b) (2) and (1) (A) in the Company's discharging five employees at the request of the Union because of their failure to comply with the union security clause. We grant enforcement of the Board's order.

The Company manufactured steel pipe and concrete pipe and fittings at a plant at Lockeford, California, from 1961 to 1964. During that time, the Company and the Union executed collective bargaining agreements covering plant employees, the 1964 agreement providing that it would remain in effect until May 1, 1966, and thereafter from year to year, absent timely notice from either party. In June 1964, the Company closed the Lockeford plant indefinitely because of a lack of work. In March 1968, the Company decided to reopen the plant and in April, Company officials met with Union officials to discuss union representation for the as-yet unhired plant employees. The parties orally agreed to adopt the provisions of the 1964 contract except for wages and fringe benefits, effective May 1, 1968. The agreement included a union security clause requiring new employees to join the Union within 30 days after being hired. By May 1, 1968, only one employee was working at the plant, although the Company expected to hire approximately 20 full-time employees. All employees hired after May 1 were considered subject to the union security clause. Four employees who failed to comply were discharged at the request of the Union. Employee Edgerly quit shortly after the Union requested his discharge for failure to comply, and the Board concluded that his departure resulted from fear of imminent discharge under the union security clause.

■ The Company and the Union violated the Act by entering into and enforcing the May 1, 1968, collective bargaining agreement. The Act guarantees to employees the right to an uncoerced selection of their bargaining representatives. By entering into a collective bargaining agreement containing a union security clause before the employees were hired and thereby presenting the new employees with a *fait accompli* when they were hired, the Company and the Union illegally interfered with that right. *Cf.* NLRB v. Finishline Industries, Inc., 9 Cir., 1971, 451 F.2d 1280.

Respondents argue that the 1968 agreement was merely a reiteration of the 1964 agreement which was still effective because never officially terminated. However, an automatic renewal clause cannot keep a collective bargaining relationship alive when the employer's business has been discontinued indefinitely. When the plant closed in 1964, the relationship between the Company and the Union disappeared; there were no employees for the Union to represent. We are not persuaded to the contrary by respondents' contention that the nature of the steel and concrete pipe-manufacturing industry is such that an actual hiatus of four years in operations is insufficient to destroy the collective bargaining relationship.

Alternatively, respondents claim that the Union did in fact represent an uncoerced majority of the plant's employees. The record is to the contrary. No employees had even been hired when the agreement was negotiated. All employees hired after that time were required to abide by the union security clause in order to retain their jobs.

"The rule thus expressed, suggesting that where a group of employees is rapidly expanding, so that the initial work force cannot truly represent more than a small fraction of the contemplated total, it will not be recognized as representative of an appropriate unit, is one frequently followed by the Board. . . .

"We think there can be no doubt, speaking generally, of the Board's power to enforce such a policy."

NLRB v. Guy F. Atkinson Co., 9 Cir. 1952, 195 F.2d 141, 144, quoted in NLRB v. Young Metal Products Co., 7 Cir., 1967, 385 F.2d 544, 547.

Substantial evidence supports the Board's findings that employees Harris, Ellis, Shelstead, and Mulka were wrongfully discharged because of their failure to comply with the union security clause. In the case of Edgerly the evidence is different. He quit on September 16, after the Union had written to the Company on September 10 requesting his discharge because of failure to pay his Union fees. He did know about the union security clause, but there is no evidence that the Company told him about the September 10 letter. Company records indicate only that he quit because he was moving to Washington. However, the Company responded to a questionnaire from the Idaho Department of Employment by stating that Edgerly "may very well have quit" because he could not pay his overdue Union fees. The board is the fact finder. It inferred that Edgerly quit in anticipation of being discharged by reason of the contract. We cannot say that the Board was wrong.

The order will be enforced.