**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FOREST CITY/DILLON–TECON PACIFIC, Respondent.**

Nos. 74–2113, 74–2491.

United States Court of Appeals, Ninth Circuit.

Sept. 5, 1975.

Elliott Moore, Deputy Associate General Counsel, N.L.R.B., Washington, D. C., Wilford W. Johansen, Director, Region 21, N.L.R.B., Los Angeles, Cal., for petitioner in No. 74–2113.

Edward C. Kaminski, Akron, Ohio, Ivan J. Potts, Michael P. Posner, Los Angeles, Cal., for respondent in No. 74–2113.

Lionel Richman & Ivan J. Potts, Los Angeles, Cal., for petitioner in No. 74–2491.

Elliott Moore, N.L.R.B., Washington, D. C., Wilford W. Johansen, Director, Region 21, N.L.R.B., Los Angeles, Cal., Buckingham, Doolittle & Burroughs, Akron, Ohio, for respondents in No. 74–2491.

Before TRASK and CHOY, Circuit Judges, and von der HEYDT,* District Judge.

PER CURIAM:

The National Labor Relations Board (Board) seeks enforcement of its order issued March 27, 1974, against Forest City/Dillon-Tecon Pacific (Company), which enforcement proceeding the Company opposes. Laborers' International Union of North America, Local 1082 (Laborers' Union), pursuant to section 10(f) of the National Labor Relations Act, 29 U.S.C. § 160(f), has petitioned this court for review of the same order. The two proceedings have been consolidated for appeal. The Board's decision and order are reported at 209 NLRB No. 141.

The Board found that the Company violated section 8(a)(1), (2), (3) of the Act, 29 U.S.C. § 158(a)(1), (2), (3), by entering into a collective bargaining contract containing a union security provision with the United Brotherhood of

Carpenters and Joiners of America, Local 530 (Carpenters' Union), at a time when the Company did not have a representative complement of employees. The Company takes issue with this finding contending that the collective bargaining agreement was not illegal.

The Laborers' Union agrees with the Board that the bargaining agreement was illegal but insists that the Board should also have directed that the Company reimburse its employees their dues and fees paid to the Carpenters' Union plus interest at six percent per annum.

The first issue is the validity of the bargaining agreement between the Company and the Carpenters' Union. The Company began its operations in the precast concrete business in early 1973 at Irwindale, California. Both the Carpenters' Union and the Laborers' Union indicated prior to the commencement of operations that they were interested in representing the Company's employees. Very quickly the Company entered into a 3-year contract with the Carpenters' Union covering its complement of eight employees. The number of employees increased from eight on February 9 to 34 on May 1 and eventually to 40.

None of the parties disagrees with the Board's finding that the Company violated section 8(a)(1), (2), (3) of the Act by prematurely recognizing the Carpenters' Union and entering into a contract with it, *NLRB v. Cen-Vi-Ro Pipe Corp.,* 457 F.2d 775 (9th Cir. 1972); *NLRB v. Seine and Line Fishermen's Union of San Pedro,* 374 F.2d 974, 977–78 (9th Cir.), *cert. denied,* 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 261 (1967), unless it was saved by section 8(f) of the Act, 29 U.S.C. § 158(f). That section creates an exception to the premature recognition violation of section 8(a) as to those employers "engaged primarily in the building and construction industry." [1]

* Honorable James A. von der Heydt, United States District Judge for the District of Alaska, sitting by designation.

1. The pertinent portion of section 8(f) reads as follows:

"It shall not be an unfair labor practice under subsections (a) and (b) of this section for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment will be en-

The Board found that the Company was not engaged in the building and construction industry as described in section 8(f), but was rather engaged in manufacturing and its employees were manufacturing employees. In making this finding the Board affirmed the findings to the same effect made by the administrative law judge on November 14, 1973, after hearing. Without reviewing the nature of the Company's pre-cast concrete business which was outlined in great detail by the administrative law judge, it clearly appears that substantial evidence on the record as a whole supports the Board's finding as to this portion of its decision.

■ A more troublesome issue is the failure of the Board to order the Company to reimburse its employees for any dues and fees that may have been paid to the Carpenters' Union pursuant to the illegal contract. The administrative law judge in his comprehensive opinion did not discuss the problem. The General Counsel of the Board filed limited exceptions to the decision of the administrative law judge and requested that the Board correct the order by requiring reimbursement. The Board, without explanation, affirmed the administrative law judge's conclusions and simply entered the order which he recommended. It is thus a matter of speculation whether the administrative law judge overlooked the obvious problem and the Board consciously chose not to discuss it, or whether the Board also simply overlooked the issue by its general affirmance. We cannot do so.

Reimbursement of union initiation fees and dues plays a vital role in remedying coercive union organizing. It promotes the policies of the National Labor Relations Act by assisting in completely disestablishing the illegally constituted union, severing its connection with the employer, restoring freedom of choice to the employee, and encouraging the employee to exercise his rights under the Act. *Virginia Electric & Power Co. v. NLRB,* 319 U.S. 533, 541, 63 S.Ct. 1214, 87 L.Ed. 1568 (1943).

These policies are applicable in the instant case. The union security clause of the illegal contract provided that all new employees had to join the union within 30 days of their dates of hire or be terminated. The contract also provided for checkoff of initiation fees and dues. The overriding effect of such an agreement is to compel new employees to join the union. *See NLRB v. Jan Powers, Inc.,* 421 F.2d 1058, 1064 (9th Cir. 1970). An employer or shop steward need not threaten a new employee with discharge or use other coercive tactics in order to encourage the employee to join the union. The employee has no choice in the matter. The new employee has every incentive to remain silent in the face of joint employer-union coercion and to submit to the abrogation of his rights.

The effect of this agreement is to taint the actions of the union and the employer in enrolling new employees in the union subsequent to the agreement date and in collecting fees and dues from them. Since the purpose of the union security and checkoff agreements was to compel new employees to join the union and pay fees and dues, and since the union had every incentive to enforce these provisions, we can only presume that the agreements were carried out and that the new employees were thus coerced to join the union. *See generally Komatz Construction, Inc. v. NLRB,* 458 F.2d 317, 323 (8th Cir. 1972); *Sheraton-Kauai v. NLRB,* 429 F.2d 1352, 1357 (9th

gaged) in the building and construction industry with a labor organization of which building and construction employees are members (not established, maintained, or assisted by any action defined in subsection (a) of this section as an unfair labor practice) because (1) the majority status of such labor organization has not been established under the provisions of section 159 of this title prior to the making of such agreement, or (2) such agreement requires as a condition of employment, membership in such labor organization after the seventh day following the beginning of such employment or the effective date of the agreement, whichever is later, . . . *Provided further,* That any agreement which would be invalid, but for clause (1) of this subsection, shall not be a bar to a petition filed pursuant to section 159(c) or 159(e) of this title."

Cir. 1970); *NLRB v. Jan Powers, Inc.,* 421 F.2d 1058, 1064 (9th Cir. 1970).

Indeed, the union security clause and the dues checkoff provision are fundamental to the continued healthy existence of the union because they assure membership and money. Once in the contract it is difficult to imagine any set of circumstances where the provisions would not be enforced. Enforcement constitutes coercion; the presence of the provisions in the contract implies enforcement. Due to the unusual circumstances of this case in which the issue of reimbursement because of coercion was not mentioned either by the administrative law judge or by the Board, we remand this issue of coercion to the Board for determination in the light of this opinion.[2] Otherwise the order of the Board is enforced in its entirety.

**2.** It is not necessary for the Board to determine the voluntariness or involuntariness of the decision of each employee to join the union. Such an approach would create an impossible burden for the Board. *NLRB v. Revere Metal Art Co.,* 280 F.2d 96, 101 (2d Cir.), *cert. denied,* 364 U.S. 894, 81 S.Ct. 225, 5 L.Ed.2d 189 (1960). Rather, it may make overall judgments or judgments as to particular classes of employees.