365 A.2d 1245

Rosemary HOLLINGER and E. Elizabeth Miller

v.

The DEPARTMENT OF PUBLIC WELFARE of the
Commonwealth of Pennsylvania, et al.,
Appellants.

John MOOK et al.

v.

Milton J. SHAPP, Governor of the Common-
wealth of Pennsylvania, et al.,
Appellants.

Supreme Court of Pennsylvania.
Argued Jan. 13, 1976.
Decided Oct. 8, 1976.
Rehearing Denied Dec. 7, 1976.

Gerry J. Elman, Deputy Atty. Gen., Harrisburg, for appellants.

Thomas A. Beckley, Harrisburg, for appellees.

Jerome H. Gerber and James L. Cowden, Harrisburg, for Pennsylvania AFL–CIO, amicus curiae.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

These appeals present the question whether jurisdiction in equity exists in suits by public employes against their employers and collective bargaining representatives to enjoin payroll deductions for union dues, and to recover the amount of dues already deducted. The Commonwealth Court held that it has equitable jurisdiction of such suits. For the reasons which follow, we have concluded that the instant action was initiated for the purpose of enjoining an *arguably* unfair labor practice and that therefore jurisdiction of the grievance is in the Pennsylvania Labor Relations Board [hereinafter "the PLRB" or "the Board"]. Accordingly, we shall reverse the decree of the Commonwealth Court.

Rosemary Hollinger and E. Elizabeth Miller, the plaintiffs-appellants in No. 19, are first level supervisors [1] in the Department of Welfare of the Commonwealth of Pennsylvania [hereinafter "the Department"]. Their complaint alleges the following facts: On January 5, 1973, the PLRB certified the Joint Bargaining Committee of the Pennsylvania Employment Security Employes' Association and the Pennsylvania Social Services Union, both affiliated with the Service Employes International

1. Section 301(19) of the Public Employe Relations Act [hereinafter "the PERA"], Act of July 23, 1970, P.L. 563, No. 195, art. III, § 301(19) (Supp.1976), provides that " 'first level supervision' and 'first level supervisor' means the lowest level at which an employe functions as a supervisor."

Union, AFL–CIO [hereinafter collectively referred to as "the union"], as the exclusive representative, for the purposes of meeting and discussing [2] wages, hours and conditions of employment, of a bargaining unit of which appellants are members. On January 22, 1973, the union and the Department entered into a "memorandum of understanding," which contained a "maintenance of membership" or "union security" provision [3] and provided for dues deductions from the pay checks of those union members who authorize such deductions.[4] The memorandum of understanding expired on June 30, 1973. On July 5, 1973, Hollinger and Miller, both of whom had previously joined the union and authorized the deduction of union dues from their pay checks, resigned from the union, and the Department ceased the dues check-off as to them.

2. Section 704 of the PERA, note 1 *supra*, 43 P.S. § 1101.704 (Supp.1976) provides:
"Public employers shall not be required to bargain with units of first level supervisors or their representatives but shall be required to meet and discuss with first level supervisors or their representatives, on matters deemed to be bargainable for other public employes covered by this act."

3. Section 301(18) of the PERA, note 1 *supra*, 43 P.S. § 1101.-301(18) (Supp.1976), provides:
" 'Maintenance of membership' means that all employes who have joined an employe organization or who join the employe organization in the future must remain members for the duration of a collective bargaining agreement so providing with the proviso that any such employe or employes may resign from such employe organization during a period of fifteen days prior to the expiration of any such agreement."

Recommendation No. 2 of the memorandum of understanding, entitled "union security," provides in pertinent part:
"That, each employe who, on the effective date of this Memorandum, is a member of the Union, and each employe who becomes a member after that date shall maintain his membership in the Union, provided that such employe may resign from the Union during a period of fifteen days prior to the expiration of the Memorandum."

4. Recommendation No. 3 of the "memorandum of understanding," entitled "dues deductions," provides in pertinent part: "That, the Commonwealth agrees to deduct the Union biweekly membership dues, an annual assessment, and an initiation fee, if any, from the pay of those employes who individually request in writing that such deductions be made."

On January 30, 1974, the union and the Department entered into a new memorandum of understanding, which, like its predecessor, provided for maintenance of membership and union dues deductions. In March of 1974, the plaintiffs were advised by the Department that their resignations from the union, not having occurred during the fifteen day period immediately prior to the June 30, 1973 expiration of the first memorandum of understanding, were ineffective; plaintiffs were told that in consequence dues would be collected from their wages retroactively to the date deductions had been terminated, and thereafter. It is alleged that this in fact occurred.

The facts asserted in the appeal at No. 20 are much the same. The plaintiffs-appellants there are thirteen "rank and file" employes of the Department of Public Welfare. Their complaint alleges the following facts: On January 4, 1972, the union was certified as the exclusive representative of a bargaining unit of which the plaintiffs are members, for purposes of collective bargaining with respect to wages, hours, and other terms and conditions of employment. On June 1, 1972, the Department and the union entered into a collective bargaining agreement which included a "union security" or "maintenance of membership" clause [5] and a provision for dues deductions from the pay checks of union members.[6] This agreement expired on June 30, 1973. Between July 1, 1973, and July 26, 1973, the plaintiffs resigned from the union and the deduction of dues from their wages was stopped. On or about July 26, 1973, the union and the Department entered into a new collective bargaining agreement which provided, as had the prior agreement, for maintenance of membership and union dues deductions. In March, 1974, the Department informed these plaintiffs also that their resignations from

5. This clause is substantially the same as the one set forth in note 3 *supra*.
6. This clause is substantially the same as the one set forth in note 4 *supra*.

364

the union were ineffective because they had not been made within the designated period prior to expiration of the first agreement and that dues deductions would resume retroactively to the dates deductions had been terminated. Again, this course of action is alleged to have been in fact adopted by the Department.

In both complaints the employees pray for injunctive relief against further dues deductions, an accounting of all moneys deducted from wages after July 1, 1973, and repayment of all moneys improperly deducted, with interest.[7] In both cases the defendants filed preliminary objections asserting lack of jurisdiction in the Commonwealth Court, failure to exhaust contractual and statutory remedies, the existence of an adequate remedy at law, failure to state a claim upon which relief can be granted and immunity from suit. The Commonwealth Court overruled the preliminary objections and directed that responsive answers be filed. This appeal followed.[8] In view of our conclusion that subject matter jurisdiction of these suits is in the PLRB we do not reach the remaining preliminary objections.

7. Both complaints name as defendants the union, the Department and its Secretary, the Honorable Helene Wolgemuth, and the Office of Administration and its Secretary, the Honorable Frank Beal. The latter two parties are joined on the ground that the Office of Administration is a party to the memorandum of understanding involved in No. 19 and the collective bargaining agreement involved in No. 20, and therefore that the Office and its Secretary are necessary parties.

In addition to the above named defendants, the complaint in No. 20 names as a defendant the Honorable Milton J. Shapp, Governor of the Commonwealth.

8. Although interlocutory, the decree of the Commonwealth Court overruling the defendants' preliminary objections is rendered appealable by the Act of March 5, 1925, P.L. 23, § 1, 12 P.S. § 672, because the decree involves a determination of a question of jurisdiction over the cause of action. Appellate jurisdiction is in this Court by virtue of Section 203 of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 203, 17 P.S. § 211.203 (Supp.1976).

 The starting point in a consideration of whether the PLRB has original jurisdiction [9] of a dispute between public employes and their employer (or between such employes and their collective bargaining representative) must be to ascertain whether the remedy sought is redress of an unfair labor practice. If it is, then the Board is vested with exclusive original jurisdiction by Section 1301 of the Public Employes Relations Act, Act of July 23, 1970, P.L. 563, No. 195 [hereinafter the PERA], 43 P.S. § 1101.1301 (Supp.1976).[10] That section provides:

"The [PLRB] is empowered . . . to prevent any person from engaging in any unfair practice listed in Article XII of this act. This power shall be exclusive and shall not be affected by any other means of adjustment or prevention that have been or may be established by agreement, law, or otherwise."

As we have said in construing identical language in the Pennsylvania Labor Relations Act, "[w]hile this provision speaks directly to preventing, as distinguished from determining the occurrence of, an unfair labor practice, we think the latter function is implicitly embraced in the former." *Building Service Employees International Union, Local 252 v. Schlesinger et al.,* 440 Pa. 448, 452, 269

---

**9.** By original jurisdiction we refer to an exclusive power in the PLRB to hear and determine the merits of a controversy. We are not here concerned with the doctrine of "primary jurisdiction," which comes into play in situations where a court and an administrative agency share original jurisdiction over the subject matter of a controversy, but the court refrains from exercising its jurisdiction until an administrative agency has reviewed the case or some facet thereof. *See* 3 K. Davis, Administrative Law Treatise § 1909, and *Id.,* 1970 Supplement, § 1908 at 640.

**10.** This rule does not, of course, divest a court of jurisdiction to entertain suits for *breach of contract* merely because the alleged breach may arguably be an unfair labor practice. See *Building Service Employees International Union, Local 252 v. Schlesinger,* 440 Pa. 443, 452 n. 3, 269 A.2d 894, 896 (1970). See also *Vaca v. Siper,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Humphry v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1966); *Carey v. Westinghouse Electric Corp.,* 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964).

A.2d 894, at 896 (1970).[11] Thus, if a party directly seeks redress of conduct which arguably constitutes one of the unfair labor practices listed in Article XII (Section 1201) of the PERA, 43 P.S. § 1101.1201 (Supp. 1976), jurisdiction to determine whether an unfair labor practice has indeed occurred and, if so, to prevent a party from continuing the practice is in the PLRB, and nowhere else. *Kerr v. Butler Building Trades Council, AFL–CIO*, 447 Pa. 247, 288 A.2d 525 (1972); *Building Service Employees International Union, Local 252 v. Schlesinger et al., supra.*[12]

Section 1201(a)(1) of the PERA, 43 P.S. § 1101.1201 (Supp.1976), prohibits a public employer from "[i]nterfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act;" and Section 1201(b)(1) prohibits employe organizations from "[r]estraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act." Among the rights guaranteed to these plaintiffs as public employes by Article IV is "the right to refrain from" joining or assisting in employe organizations. Section 401 of the PERA, note 1 *supra,* 43 P.S. § 1101.-401 (Supp.1976). We are of opinion that the deduction of union dues from employes' salaries, if done without valid authorization by the employes affected, arguably constitutes an interference with or a restraint upon their right to refrain from joining or assisting in employe organizations of which the employes do not wish to be

11. In *Schlesinger* we were construing the language of Section 8(a) of the Pennsylvania Labor Relations Act, Act of June 1, 1937, P. L. 1168, No. 294, § 1, *as amended,* 43 P.S. § 211.8(a).

12. This case presents no problem of preemption by the federal government acting through the National Labor Relations Board. See *San Diego Trades Council, etc. v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, (1959) and its progeny. Cf. *Kerr v. Butler Building Trades Council, AFL–CIO,* 447 Pa. 247 at 252–253, 288 A.2d 525 at 526 *et seq.* (1972); *Building Service Employees International Union, Local 252 v. Schlesinger,* 440 Pa. 448, 269 A.2d 894, 896 (1970).

members. Cf. *National Labor Relations Board v. Injection Molding Co.*, 211 F.2d 59, 65 (8th Cir. 1954). As such, the acts of both employers and unions in causing such unauthorized deductions to be made, if proved to have occurred, may be unfair labor practices under Sections 1201(a)(1) and 1201(b)(1), respectively, of the PERA, and actions seeking to enjoin such deductions are within the exclusive jurisdiction of the Labor Relations Board by virtue of Section 1301 of the PERA, note 1 *supra,* quoted above.[13]

The appellees contend that a contrary result is required by our decision in *Philadelphia Federation of Teachers, Local No. 3, AFT, AFL–CIO v. Board of Education,* 458 Pa. 342, 345 n. 3, 327 A.2d 47, 49 n. 3 (1974). We there held, *inter alia,* that the common pleas court had been correct in concluding that it had jurisdiction in equity in a suit brought by a union to compel specific performance of a dues deduction clause in a collective bargaining agreement. That case was thus a suit to enforce a contract, not one to abate an unfair labor practice, see *Building Service Employees International Union, Local 252 v. Schlesinger, et al., supra,* 440 Pa. at 450, n. 2, 269 A.2d 894, and the parties had agreed to forgo the arbitration procedure specified in the agreement. See Section 903 of the PERA, 43 P.S. § 1101.903 (Supp.1976). Moreover, no contention that original jurisdiction lay in the PLRB was made at any stage of the proceeding. Accordingly, *Philadelphia Federation* is not controlling on the jurisdictional aspect of the case at bar.[14]

13. Compare Section 302(e) of the National Labor Management Relations Act, 1947, 29 U.S.C. § 186(e), which provides that the federal district courts shall have jurisdiction to restrain violations of Section 302, which, *inter alia,* sets forth the conditions under which union dues may be validly deducted from employes' salaries. There is no comparable provision in the PERA.

14. In *Philadelphia Federation of Teachers, Local No. 3, AFT, AFL–CIO v. Board of Education of the School District of Philadelphia,* 458 Pa. 342, 327 A.2d 47 (1974) we held, construing the

The appellees argue, finally, that PLRB jurisdiction should not preclude access to the courts to redress the consequences of unfair labor practices where the remedies obtainable in the PLRB are inadequate. The Commonwealth Court agreed, concluding that only by a suit in equity could the appellees obtain immediate cessation of the dues deductions and the return of moneys improperly deducted. Whatever may be the proper disposition of a case where the remedy obtainable in the Board is plainly inadequate, we are satisfied that this is not the situation in the case at bar. Section 1303 of the PERA, 43 P.S. § 1101.1303 (Supp.1976), provides in pertinent part:

"If, upon all the testimony taken, the [PLRB] shall determine that any person named in the complaint has engaged in or is engaging in any unfair practice, the board shall state its findings of fact, and issue and cause to be served on such person an order requiring such person to cease and desist from such unfair practice, and to take such reasonable affirmative action, including reinstatement of employes, discharged in violation of Article XII of this act, with or without back pay, as will effectuate the policies of this act." [15]

maintenance of membership clause and the dues deduction provision of the PERA, that an employee may resign from a union at a time when no collective bargaining agreement is in effect, and that "the retroactive application of a collective bargaining agreement containing maintenance of membership and dues deduction provisions cannot nullify otherwise valid resignations of employees from the union which occur before the agreement is executed." 458 Pa. at 349, 327 A.2d at 51. This decision was rendered after the Department of Welfare in the case at bar had announced that the resignations of the appellants, although submitted when no agreement was in force, were invalid because not rendered during the escape period of the expired contracts. The brief of the Amicus in the case at bar, Pennsylvania AFL–CIO, observes (p. 21) that the decision in *Philadelphia Federation of Teachers* "may well be determinative of the merits of the instant cases," but does not bear on the question of subject matter jurisdiction in the Commonwealth Court. As indicated in the text, we agree.

15. See also Section 8(c) of the Pennsylvania Labor Relations Act, Act of June 1, 1937, P.L. 1168, No. 294, § 8(c) as amended, 43 P.S. § 211.8(c).

In our view the language of this provision is broad enough to permit the PLRB not only to order cessation of improper dues deductions if it finds that they are being made, but also to compel the payment to employes of moneys which have been improperly deducted.[16] This is all that the appellees seek in these actions.[17] To hold that the PLRB does not have original jurisdiction to hear the disputes would be effectively to delete the word "exclusive" from Section 1301 of the PERA, *ante* at 1249.

The decrees of the Commonwealth Court overruling the defendants' preliminary objections are reversed. In each case the preliminary objection to the jurisdiction of the Commonwealth Court is sustained, and the complaint is dismissed.

Each party to bear own costs.

16. It is well settled that under Section 10(c) of the National Labor Relations Act, the National Labor Relations Board has the authority to order the refunding of union dues improperly checked off. See *Virginia Electric & Power Co. v. NLRB,* 319 U.S. 533, 63 S.Ct. 1214, 87 L.Ed. 1568 (1943); *NLRB v. Forest City/Dillon-Tecon Pacific,* 522 F.2d 1107 (9th Cir. 1975); *Komatz Construction, Inc. v. NLRB,* 458 F.2d 317 (8th Cir. 1972); *NLRB v. Broderick Wood Products Co.,* 261 F.2d 548 (10th Cir. 1958).

17. The Commonwealth Court expressed doubt as to whether the appellees would have standing to initiate proceedings in the PLRB inasmuch as their complaints allege that they are no longer union members. The PERA was expressly designed, however, to protect the rights of *all* public employes, not merely those who are union members. See Sections 101 and 401 of the PERA, 43 P.S. §§ 1101.101 & 1101.401 (Supp.1976). Many of the unfair practices listed in Section 1201 of the PERA, 43 P.S. § 1101.1201 (Supp.1976) are applicable to nonmembers of unions. Moreover, Section 1302 of the PERA, 43 P.S. § 1101.1302 (Supp.1976), provides that "any interested party" may initiate proceedings in the PLRB. Accordingly, under the allegations of their respective complaints, the appellees would have standing to proceed before the PLRB.