Horn *v.* $1,950 (et al., Appellants).

Argued March 11, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Charles F. McKenna,* with him *Grant E. Wesner,* and *Ernest G. Nassar,* for appellants.

*Darlington Hoopes,* for appellee.

OPINION BY ERVIN, J., June 11, 1957:

This action originated in assumpsit against Karl Lieberknecht, Inc. by the appellees on behalf of 898 of said employes to recover the sum of $1,950.00 deducted by the employer on May 6, 1949 from their respective pays. Another action was brought against the said defendant by United Steelworkers of America, C.I.O. (hereinafter referred to as the "union"), for the sum withheld. The employer filed a petition for interpleader and obtained permission to and did pay the said sum of money into court. Appellees and appellants were interpleaded against the fund. Appellants thereupon filed a motion for judgment on the pleadings, which was refused by the lower court for the reason that the pleadings raised a question of fact which had to be determined before judgment could be entered. Appellants then appealed to the Superior Court, which affirmed the action of the lower court (170 Pa. Superior Ct. 348, 85 A. 2d 623) and the mat-

ter thereupon went back for a hearing. The parties stipulated that the matter should be heard by the court without a jury. After the taking of testimony and argument, the hearing judge entered a verdict for the union. Appellees filed exceptions thereto and the court then reopened the proceedings for the purpose of taking further testimony. After the taking of this testimony the matter was again argued before the court in banc, which court sustained certain of appellees' exceptions and entered a verdict in favor of each of the five original plaintiffs and on behalf of the 893 others who authorized this action, and against the fund of $1,950.00, in the amount of $2.00 each, less proportionate shares of the costs. Appellants filed exceptions which were argued before the court in banc, which court thereafter made an order dismissing the exceptions and entering judgment in favor of the appellees, from which judgment this appeal was taken.

The facts are as follows: The employer and the union entered into a collective bargaining agreement which became effective on May 1, 1947 and was to continue in full force and effect until May 1, 1949. This agreement provided that on an employe's first payday of each month the employer would deduct union dues from the pay of all such employes who had worked at least 40 hours in the preceding calendar month and forward the same to the union. The agreement also provided that "The Union will supply to the Company, cards signed by its members, authorizing the Company to deduct from the wages of Employees who signed said cards, the monthly Union dues and initiation fees, and assessments, if any." This section of the agreement clearly contemplated that the deductions shall be made in accordance with the provisions of the authorizations signed by the members of the union. These written authorizations signed by the employes were in

fact furnished to the employer by the union and they contained the following pertinent language: "This assignment and authorization shall be effective and cannot be cancelled for a period of one (1) year from the date appearing above or until the termination date of the current collective bargaining agreement between the Company and the Union, whichever occurs sooner.

"I hereby voluntarily authorize you to continue the above authorization and assignment in effect after the expiration of the shorter of the periods above specified, for further successive periods of one (1) year from such date, *provided there is then a collective bargaining agreement between the Company and the Union providing for a check-off of union membership dues.* I agree that if appropriate under Federal Law this authorization and assignment shall become effective and cannot be cancelled by me during any of such years, but that I may cancel and revoke by giving to the appropriate management representative of the plant in which I am then employed, an individual written notice signed by me and which shall be postmarked or received by the Company within fifteen days following the expiration of any such year or within the fifteen days following the termination date of any collective bargaining agreement between the Company and the Union covering my employment if such date shall occur within one of such annual periods. Such notice of revocation shall become effective respecting the dues for the month following the month in which such written notice is given; a copy of any such notice will be given by me to the Financial Secretary of the Local Union." (Emphasis added)

The lower court found that the dues in question were deducted from the wages of the employes by the employer on May 6, 1949 but were dues owing for the month of April 1949. That court also found: "We con-

clude that in view of the admitted fact that the last contract between the parties expired on May 1, 1949, the checkoff authorizations were void after that date and a deduction of union dues on May 6, 1949 was improper regardless of the provisions of the contract and in spite of the fact that the dues were deducted for the month of April, 1949." We are in accord with that conclusion. The collective bargaining agreement was terminated on May 1, 1949 and the checkoff authorizations, by their express terms, were effective only until the termination date of the said agreement. Thereafter the company was not authorized to pay the employes' wages to anybody except the employes. The pertinent part of the checkoff authorizations may be summarized as follows: "This assignment and authorization shall be effective . . . for a period of one (1) year from the date appearing above or *until the termination date of the current collective bargaining agreement between the Company and the Union, whichever occurs sooner.*" (Emphasis added) It would be difficult, if not impossible, to find a clearer way of saying that the checkoff authorizations were not to be effective beyond the termination date of the collective bargaining agreement.

The clause omitted from the above quotation reads: "and cannot be cancelled," and applies only to the escape clause under which employe had the right to escape from the union, and to cancel his checkoff authorization "within fifteen days following the expiration of any such year or within the fifteen days following the termination date of any collective bargaining agreement between the Company and the Union. . . ." The escape clause, obviously, only would have applied in the event of renewal of the collective bargaining agreement between the same parties, and the desire of the employe to escape from the obligation to pay dues to the union.

Since there was no such renewal, there was no necessity for such cancellation. If there had been a renewal of the collective bargaining agreement between the same parties, the checkoff authorization would have automatically been extended in accordance with the provision in the preceding sentence of the authorization, and the employe, in order to escape, would have had to exercise his right of cancellation. Since the agreement was not renewed, the checkoff authorization automatically expired on the termination date of the agreement, and the cancellation clause was inapplicable.

If the above interpretation needs further confirmation, it is given in the language of the first sentence of paragraph 4 of the checkoff authorization, which reads as follows: "I hereby voluntarily authorize you to continue the above authorization and assignment in effect after the expiration of the shorter of the periods above specified, for further successive periods of one (1) year from such date, provided there is then a collective bargaining agreement between the Company and the Union providing for a check-off of union membership dues." This clearly indicates that in the event of termination of the contract between the parties, the authorization is no longer effective, and that the escape clause procedure is not necessary.

The union was not entitled to an additional deduction after the termination of the agreement. It is clear from the evidence that the deductions were made and remitted to the union during each of the 24 months of the term of the agreement, that is, from May 1947 to April 1949 inclusive. The union cannot, by applying the deductions made in one month to the dues for the preceding month, entitle itself to an additional month's deductions for which the contract does not provide.

Order and judgment affirmed.