## Dauphin Deposit Trust Co. v. The Patriot-News Co.

*Prowell, Kunkel & Naugle,* for plaintiffs.
*Nauman, Smith, Shissler & Hall,* for defendant.

SOHN, J., February 23, 1960.—The matter before us originated in a suit in assumpsit, based upon a written contract to which suit a demurrer has been filed by defendant, the Patriot-News Company, which avers that the complaint fails to state a claim upon which relief can be granted.

Plaintiffs are the executors of the estate of E. L. King. King died on July 12, 1958, while in the employ of the Patriot. He was continuously employed by that company, or its corporate predecessors, as assistant circulation manager, from on or before June 1, 1924, until the time of his death.

Under date of June 8, 1949, the Patriot and Harris-. burg Newspaper Guild, a trade union hereinafter referred to as the "Guild," entered into a contract relative to wages, hours, working conditions and other

matters. Said contract, by its terms, was retroactive to January 1, 1949, and specifically terminated by its own terms on January 1, 1951. Although King was not a member of the "Guild," the contract provided that it was entered into by the "Guild" on behalf of all the employes of the Patriot, and specifically applied to the assistant circulation manager in all respects except the hours provision of article II.

On June 1, 1949, and during the two-year term of the aforementioned contract, King passed the 25-year mark as an employe of the Patriot. He did not at any time retire, or evidence any intention to retire, and continued as an employe of the company until the time of his death.

Plaintiffs are now asserting that the estate of King is entitled to retirement pay, computed as if King had retired on June 1, 1949. This claim is based upon a certain provision in the aforedescribed contract that appears in article VII, paragraph 5, which provides as follows:

"After 25 years of service with Publisher *an employe shall be entitled to retire, if he so desires,* and Publisher shall be required to pay him the maximum dismissal pay on his retirement." (Italics supplied)

Plaintiffs are now demanding the pay to which they say King would have been entitled had he retired on June 1, 1949, under the terms of this paragraph. Plaintiffs further claim that the retirement pay would be the same were it computed as of June 1, 1949, or as of July 12, 1958, the date of King's death. As before mentioned, King did not retire after 25 years of service nor did he ever notify defendant of any intention to retire. King never contributed anything whatsoever to any fund, nor did he ever become a member of the "Guild."

It must be borne in mind that the contract under which plaintiffs sue here specifically expired on Janu-

ary 1, 1951. Never at any time, even up until the time of his death, did King make any effort towards retirement.

We are confronted with two questions in this case. The first question is whether the contract which expired specifically on January 1, 1951, covered the retirement rights of one who did not retire during the time said contract was in effect. The second question is whether, if King could have exercised retirement rights, did he, in fact, do so?

We find that King did not meet the conditions clearly expressed in article VII, paragraph 5 of the contract entitling him to retirement pay. Paragraph 5 of article VII is very clearly and expressly stated. It is as follows:

"After 25 years of service with Publisher an employee shall be entitled to retire, *if he so desires*, and Publisher shall be required to pay him the maximum dismissal pay *on his retirement*." (Italics supplied)

From January 1, 1949, until January 1, 1951, the date upon which the contract expired, we find that King would have had a right to retire during that particular period of time and would have been entitled to his retirement pay if he had in fact retired. The contract sued upon contains an "express condition," and that express condition is that King should have signified his intention to retire any time up to January 1, 1951, if he so desired.

An express condition is created whenever the parties have used language that makes some fact or event necessary to the creation of the right and duty to performance of a promise: 3 Corbin on Contracts, §§631, 639, pp. 518, 546; 3 Williston on Contracts, Revised Edition, §671, p. 1927; A. L. I. Restatement of the Law of Contracts, §252, p. 364. As pointed out by Williston, "Where, therefore, A promises B to do something if a certain contingency happens . . . there

is no breach of promise, and logically, therefore, no liability unless the contingency happens." 3 Williston on Contracts, supra, §808, p. 2269.

In Daniels v. Lehigh Portland Cement Co., 281 Pa. 353, 357 (1924), our Supreme Court held that a condition in a contract will be held to apply to the antecedent words with which it is connected unless a contrary intent appears. In this contract we fail to see any contrary intent expressed.

In this case, defendant's promise to pay the retirement pay was conditioned upon two things: (1) Twenty-five years of service; (2) Retirement at the employes' election. This option to retire was never exercised. All we have in this case is simply a promise conditioned on a future event that did not happen and now cannot happen.

Article VII of the contract upon which this suit is brought deals with five subjects. The first is dismissal pay to an employe upon his discharge. The second is notice to the union on his contemplated discharge. Third, it provides for death payment if the employe is not covered by group insurance. Fourth, it provides for a rehiring-list if the discharge was for economy purposes. Fifth, it provides for retirement. The paragraph dealing with discharge and dismissal sets forth the formula for computing dismissal pay. Under paragraph 5, this same formula is incorporated by reference for purposes of computing retirement pay. It thus is apparent that article VII clearly establishes death benefits, dismissal benefits and retirement benefits, and negates any possible confusion of the terms or substitution converting retirement pay to a death benefit.

We have carefully considered the case of Logan v. Glass, 136 Pa. Superior Ct. 221, 7 A. 2d 116, and McBride v. Allegheny County Retirement Board, 330 Pa. 402, and all of the various other text book citations

and cases cited thereunder, but find that in none of them does the law as set forth therein become applicable to the facts developed in this case. There is no question that under the original contract King was a third-party beneficiary or donee and that he could, if he had so elected, have collected $3,200 under the terms of the contract prior to January 1, 1951. However, he gave no indication that he desired to retire, and he made no claim for retirement benefits.

Moreover, the contract in question in this case is a private contract between private parties relating to employment. Its terms could be altered by those parties upon mutual consideration. After its expiration on January 1, 1951, the parties were both free to enter into any new contract they desired. Since no other contract of employment concerning defendant and King is alleged, the contract of June 8, 1949, must be considered as the contract of his employment. As such, it amounts to a contract to employ King until January 1, 1951, and, if he was entitled to and did retire before that date, pay to him a specified retirement pay or sum. No contract of employment between King and defendant beyond the date of January 1, 1951, is alleged in the pleadings. If other contracts had been entered into they might have changed the employment contract sued upon here materially, including the retirement feature on which plaintiffs' case is based.

The decision of the Pennsylvania Supreme Court in Horn v. $1,950, 184 Pa. Superior Ct. 321, affirmed in 392 Pa. 288, makes it clear that the contract in question here terminated according to its terms on January 1, 1951, and that all rights thereafter provided for likewise came to an end. The contract sued upon expired on January 1, 1951, but the contract would have continued in effect if either party, 60 days before January 1, 1951, had initiated negotiations for a new agreement to begin at the expiration of the present

contract. If such negotiations had been instituted, the provisions of the contract sued upon here were to remain in effect during such period of negotiations if they extended beyond January 1, 1951. There is no allegation in the complaint with respect to such negotiations, and so we must conclude that the contract in question definitely expired on January 1, 1951.

There can be no question but that King under his contract of June 8, 1949, would have had the right to exercise his option to retire during the period of time covered by the contract, to wit: from January 1, 1949, to January 1, 1951, provided he had been an employe of the Patriot for a period of 25 years. This one condition had already been complied with in that he had on June 8, 1949, been employed for a period of 25 years. He, therefore, had a vested right to elect to retire and receive the stipulated retirement sum, provided he retired during the period covered by the contract. This is made clear under the decision in McBride v. Allegheny County Retirement Board, 330 Pa. 402 (1938), which we have already cited in our opinion.

Plaintiffs have argued that King had a vested interest under the terms of the orignal contract and that his death in 1958 was tantamount to a "retirement." We cannot agree with this argument. Death is not retirement. In Black's Law Dictionary, Deluxe 4th edition, at page 1479, to "retire" is defined as follows:

"To withdraw from active service as an officer of the army or navy; to separate, withdraw, or remove."

In 37A Words and Phrases (permanent edition) at p. 19 in the advanced sheets, to "retire" is likewise defined as follows:

" 'Retire' means to 'withdraw' from office, a public station, business or the like; as having made a large fortune, he retired; in the popular sense, to 'retire' implies that at least part of the *motive* power creating

the resultant situation originated in the person whose status is changed." (Italics supplied)

Again in Webster's New International Dictionary, second edition, at page 2128, to retire is defined as follows:

"To withdraw, go, or betake oneself, for the sake of privacy, seclusion, protection, or the like; to go into retreat; as, to *retire* to his home; to *retire* from the world."

Likewise it is defined in the same work as "To go away; to withdraw; to take oneself away . . . To withdraw from office, a public station, business, or the like; as, having made a large fortune, he *retired*." Nowhere in any of the definitions of this word "retire" do we find that it is synonymous with death. Therefore, at the time of his death, King had never complied with the second provision of the contract under which he would have been entitled to receive retirement pay up and including January 1, 1951.

To sum up our conclusions, the retirement of King was a condition precedent to defendant's duty to pay him retirement pay, and, since he did not retire, defendant is under no duty to plaintiffs, the executors of King's estate, for the payment of retirement pay. He could have retired prior to January 1, 1951, and received his retirement pay. However, since he did not retire during the term the contract was in effect, and since no other contract has been alleged in the pleadings, defendant is under no duty to King or to the executors of his estate. We, therefore, must conclude that the complaint fails to state a cause of action and that the demurrer should be sustained and the complaint dismissed. We, therefore, make the following

*Order*

And now, to wit, February 23, 1960, the demurrer filed by defendant is herewith sustained and plaintiff's complaint dismissed. Costs to be paid by plaintiffs.