Dr. Luther Burse and Dr. Arthur T. DeGenaro and others similarly situated, Petitioners *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent.

Argued September 8, 1980, before President Judge CRUMLISH and Judges MACPHAIL and WILLIAMS, JR., sitting as a panel of three.

*Richard Kirschner*, with him *Deborah R. Willig, Kirschner, Walters & Willig*, for petitioners.

*Cheryl G. Young*, with her *James L. Crawford, Anthony G. Busillo*, and *Mary Teresa Gavigan*, Assistant Attorneys General, for respondent.

*Jerome H. Gerber*, with him *James L. Cowden, Handler and Gerber, P.C.*, for intervenor, Association of Pennsylvania State College and University Faculties.

OPINION BY PRESIDENT JUDGE CRUMLISH, February 11, 1981:

This is an appeal from a final order of the Pennsylvania Labor Relations Board (Board) dismissing Petitioners'[1] unfair labor practice charges. We affirm.

On October 2, 1974, the Association of Pennsylvania State College and University Faculties (APSCUF) and the Commonwealth entered into a collective bargaining agreement (Agreement), to terminate August 31, 1977, which required all APSCUF

---

[1] Petitioners include Dr. Luther Burse, Professor, Cheyney State College, Dr. Arthur T. DeGenero, Professor, Mansfield State College, and other faculty members of the state-owned colleges and university who attempted to resign their union membership during the summer of 1977.

members to maintain their union membership during the term of the Agreement,[2] but permitted membership resignations during a fifteen-day period immediately prior to the contract's expiration. The Agreement also authorized the Commonwealth, as employer, to deduct union dues from the salary of those faculty members who gave written authorization,[3] provided it was irrevocable outside the fifteen-day period.

During 1977, the College and University Faculty Association (CUFA), an affiliate of the Pennsylvania State Education Association (PSEA), began a campaign to supplant APSCUF as the collective bargaining agent for the state college and university faculty membership. Consequently, some petitioners resigned their membership while others resigned from the union *and* revoked their dues deduction authorizations during the last fifteen days of August, 1977.[4]

Since APSCUF and the Commonwealth had extended the terms of their 1974 contract until June 30, 1979, APSCUF contended there was no resignation/revocation period in 1977 and proceeded to arbitration with the Commonwealth under the Agreement's grievance procedure. The parties agreed to

[2] Section 401 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 195, 43 P.S. §1101.401, permits public sector labor contracts requiring union members to maintain their membership during the term of a collective bargaining agreement.

[3] Section 705 of the Act, 43 P.S. §1101.705, provides for membership dues deductions as a proper subject of bargaining.

[4] Petitioner Burse attempted to resign his APSCUF membership by sending a form provided by rival PSEA to PSEA headquarters, but made no effort to revoke his dues deduction authorization. Petitioner DeGenero attempted to resign his membership by sending the same form to PSEA and by sending a letter of resignation to the Mansfield President of APSCUF, and attempted to revoke his dues deduction authorization by notifying the Mansfield State College payroll office.

place funds collected pursuant to check-off authorizations in an escrow account pending the arbitrator's decision.

Upon application, the arbitrator concluded that faculty members could resign membership and revoke their dues deduction authorization in August, 1977, but that membership resignation did not automatically revoke dues deduction authorizations.

In response, Petitioners charged unfair labor practices, alleging that the Commonwealth and APSCUF violated the Public Employe Relations Act (PERA) by continuing to collect and retain dues after union resignation.[5] The Board dismissed these charges, concluding that maintenance of membership and dues deductions are separate concepts, necessitating both membership resignation and specific revocation of dues deduction authorization. Therefore, those union members who executed only a valid membership resignation were bound by their deduction agreement until the next valid escape period.

Petitioners' challenge to the Board's findings requires a determination of whether a public employee continues to be bound by a dues deduction authorization agreement *after* he has terminated union membership.

At the outset, we conclude that the Board's reliance on private sector federal labor decisions is well-founded.

Not being unmindful of the distinctions between private and public labor legislation, *Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975), we look to federal decisions for guidance where, as here, there is

---

[5] Petitioners alleged violations of Section 803 of the Act. 43 P.S. §1101.803, Sections 1201(a)(1), (2) and (5) of the Act, 43 P.S. §1101.1201(a)(1), (2) and (5), and Sections 1201(b)(1) and (3) of the Act, 43 P.S. §§1101.1201(b)(1) and (3).

no meaningful difference between the established policies of PERA and the National Labor Relations Act (NLRA),[6] *Appeal of Cumberland Valley School District*, 483 Pa. 134, 394 A.2d 946 (1978). Our federal brothers have historically recognized the distinction between union membership and dues deduction agreements characterizing the latter as a simple contract between employee and employer which survives membership resignation. *See National Labor Relations Board v. Shen-Mar Food Products, Inc.*, 557 F.2d 396 (4th Cir. 1977); *Associated Press v. National Labor Relations Board*, 492 F.2d 662 (D.C. Cir. 1974).[7]

Initially, Petitioners contend that APSCUF By-laws Article III, which specifies three categories of dues-paying members, prohibits payments by non-union employees. We cannot agree.

There is no by-law prohibiting payments by bargaining unit members who do not maintain union membership. To the contrary, non-union members may contribute amounts equivalent to dues as their "fair share" support of the bargaining unit.[8] The policy

---

[6] Both Federal and Pennsylvania labor legislation permit union security provisions and dues deduction authorization clauses in collective bargaining agreements. *See* Section 8(a)(3) of NLRA, 29 U.S.C. §158(a)(3) (permits union shops); Section 302(c)(4) of the Labor Management Relations Act, 29 U.S.C. §186(c)(4) (permits dues deductions); Section 401 of PERA, 43 P.S. §1101.401 (permits maintenance of membership shops), and Section 705 of PERA, 43 P.S. §1101.705 (permits dues deductions).

[7] In *Philadelphia Federation of Teachers v. Board of Education*, 458 Pa. 342, 327 A.2d 47 (1974), our Supreme Court implicitly distinguished the two concepts in a public sector labor agreement that provided for two separate acts: resignation from membership and revocation of dues deduction authorization.

[8] Although we find no authorization by resolution or by-law for the fair-share program, we note that at least one non-union employee, who was a bargaining unit member, has contributed to the union on such a basis.

of the Commonwealth and APSCUF, in promoting orderly and constructive relationships between public employees and their employers, is furthered by encouraging contribution by non-union bargaining unit members, thus permitting them to financially support a union bargaining on their behalf, although they are aloof from active unionism.

Petitioners also challenge the Board's conclusion that the Agreement's Article XXVI(b)(1) "check off" provision specifically authorizes deductions to APSCUF by non-union teachers.[9] Again, we disagree with Petitioners' position.

Article XXVI as a whole can be read sensibly only if its references to "faculty" and "faculty members" are interpreted to mean persons on the faculties of the

---

[9] Article XXVI(B)(1) provides:

B. *Check-off*

1. The COMMONWEALTH agrees to deduct in biweekly installments the regular annual dues of APSCUF from the pay of those FACULTY who individually request in writing that such deductions be made. The amount(s) to be deducted shall be certified in writing by APSCUF to the COMMONWEALTH and the aggregate deductions from all FACULTY MEMBERS shall be remitted monthly to APSCUF, together with an itemized statement containing the names of the FACULTY MEMBERS from whom the deductions have been made and the amount so deducted from each one. The aforesaid remittance shall be made by the last day of the month following the month in which such deductions have been made. Each FACULTY MEMBER'S written authorization shall be irrevocable for the term of this Agreement or any extension thereof or successor thereto, but may be revoked at the expiration thereof, provided such action is taken during a period which commences fifteen (15) days prior to the expiration date of this Agreement.

The Board reasoned that use of the term "faculty" authorized dues payments by non-union professors.

state-owned colleges and university. Article XXVI(A)[10] provides in part that "[a]ll *faculty members* who are members of *APSCUF* as of the date of ratification of this Agreement ... shall ... maintain their membership in APSCUF...." (Emphasis added.) To infer that the term "members" contemplates only union members ignores the clear distinction to be drawn between "faculty members" and union members, renders the phrase "members of APSCUF" superfluous, and results in a whimsical, unrealistic construction of Article XXVI(A).

The Board's conclusion that membership and dues deduction authorization are distinct concepts is bolstered further by the text of Article XXVI. Not only does the Agreement provide in separate clauses for maintenance of membership and dues deductions, but it specifies two separate and distinct acts by employees: (1) maintaining membership in the *union*, with an option to *resign* during a specified period, and (2) authorizing the *employer* to deduct dues from an employee's paycheck, with an option to *revoke* the authorization during a specified period.

Petitioners, in furtherance, urge us to consider Section 705 of the Act, 43 P.S. §1101.705, which provides:

---

[10] Article XXVI(A) provides:

A. *Maintenance of Membership*

ALL FACULTY MEMBERS who are members of APSCUF as of the date of ratification of this Agreement or who, thereafter, during its terms become members of APSCUF, shall, as a condition of continued employment, maintain their membership in APSCUF for the term of this Agreement; provided, however, that any such FACULTY MEMBER may resign from membership in APSCUF during a period of fifteen (15) days prior to the expiration of this Agreement and, provided further, that the payment of dues and assessments while he is a member shall be the only requisite employment condition.

Membership dues deductions and maintenance of membership are proper subjects of bargaining with the proviso that as to the *latter*, the payment of dues and assessments *while members*, may be the only requisite employment condition. (Emphasis added.)

Section 705 contains no language which limits dues deductions to union members, but requires APSCUF members to pay dues by whatever method they choose so long as they are members of the union. As we review it, dues deductions are provided as a convenience for employees to facilitate payment of dues by union members and is not required by PERA, the Agreement or a condition of continued employment. [11]

---

[11] Petitioners also cite Sections 301 and 401 of the Act, 43 P.S. §§1101.301, 1101.401, which provide:

§1101.301 Definitions

As used in this act:

....

(11) 'Membership dues deduction' means the practice of a public employer to deduct from the wages of a public employe, with his written consent, an amount for the payment of his membership dues in an employe organization, which deduction is transmitted by the public employer to the employe organization.

§1101.401 Employe rights

It shall be lawful for public employees to organize, form, join or assist in employe organizations or to engage in lawful concerted activities for the purpose of collective bargaining or other mutual aid and protection or to bargain collectively through representatives of their own choice and such employes shall also have the right to refrain from any or all such activities, except as may be required pursuant to a maintenance of membership provision in a collective bargaining agreement.

Although ordinarily deduction agreements are executed for the purpose of paying union dues, Section 301(11) does not require union membership by an employee who authorizes payroll deductions for APSCUF's benefit. Furthermore, enforcement of voluntarily authorized deduction agreements by union or non-union members does not coerce union activity in violation of Section 401.

Lastly, we reject Petitioners' contention that the Board's decision creates a prohibited agency shop.

It is indisputable that agency shops are illegal in the public sector. *See Pennsylvania Labor Relations Board v. Zelem*, 459 Pa. 399, 329 A.2d 477 (1974). The essence of an agency shop is a *requirement* that all employees, union and non-union alike, pay a service fee to the union, *as a condition of employment* in order to help defer bargaining and contract administration expenses. No such employment condition is imposed by our decision which does not require employees to become union members, contribute to the union or enter into a dues deduction contract. We merely enforce today a contract between employee and employer which was never revoked in accordance with the contract terms.[12]

Accordingly, we conclude that maintenance of membership and dues "check-off" authorization are separate contractual obligations which require separate acts of resignation and revocation under both PERA and the Collective Bargaining Agreement here at issue.

Affirmed.

ORDER

The decision of the Pennsylvania Labor Relations Board, dated August 7, 1979, is affirmed.

---

[12] Since we conclude that the Commonwealth correctly "checked-off" dues on APSCUF's behalf until employee authorization was separately and properly revoked, we need not discuss Petitioners' unfair labor practice charges.