462 A.2d 1324

**CITY FIREFIGHTERS' ASSOCIATION OF PHILADELPHIA, LOCAL 22, Appellant**

v.

**CITY OF PHILADELPHIA**

**and**

**et al.**

Superior Court of Pennsylvania.

Argued Feb. 18, 1981.

Filed June 24, 1983.

John W. Beavers, Jr., Philadelphia, for City Firefighters, appellant (at No. 456) and appellee (at No. 1147).

William F. Coyle, Philadelphia, for Akers et al., appellants (at No. 1147) and appellees (at No. 456).

Before PRICE, MONTEMURO and VAN der VOORT, JJ.

VAN der VOORT, Judge:

This appeal involves a dispute between the City Firefighters' Association of Philadelphia, Local 22 (hereafter referred to as the Union) and a number of Officers of the Fire Department of Philadelphia (hereafter referred to as Officers). The City of Philadelphia has informed this court that while it is a named party, it has no interest in the current appeal and will not file a brief.

Prior to a 1976 arbitration award the Union supplied its members with the following form pertaining to the withholding of union dues.

## CITY OF PHILADELPHIA

You are hereby authorized and empowered to withhold from my monthly pay the sum of _____ (_____) dollars as dues payable to CITY FIRE FIGHTERS' ASSOCIATION—LOCAL 22 I.A.F.F.—AFL–CIO which money you may pay over to the Treasurer of City Fire Fighters' Association, Local 22; this power and authority is *revocable by me in writing at any time and at my pleasure,* and shall not under any circumstances be construed as an assignment to the Union of any interest in pay, partial or otherwise, . . . .

(Emphasis supplied)

An arbitration award was entered on June 6, 1976, which was applicable in August 1978, contained the following provision.

The City of Philadelphia agrees to deduct dues and initiation fee of Local 22 from the pay of those fire fighters who individually request in writing that such

deductions be made. The amounts to be deducted shall be certified with the City of Philadelphia, by Local 22, and the aggregate deductions of all fire fighters shall be remitted together with an itemized statement to Local 22 by the last day of the succeeding month, after such deductions are made. This authorization shall be *irrevocable* by the fire fighter during the term of this Award, except that it may be revoked, in writing, during a period of fifteen (15) days prior to the expiration of such Award, and, provided further, that that written notification is *received by the City of Philadelphia and Local 22, within the prescribed fifteen (15) days period* as aforesaid.

(Emphasis supplied)

In August 1978, the City forwarded an amount to the Union that was substantially less than that collected for dues in prior months. This was a result of 179 officers having notified the City either to discontinue the dues withholding and/or that the officer was withdrawing from the Union. Similar notice was not given to the Union.

The Union brought an action in equity against the City to determine the propriety of the City's failure to continue the checkoff of Union dues as to the Officers. The City disclaimed any interest except as a third party stakeholder. The Officers intervened arguing that the Union was not entitled to the dues in question. The City was ordered to hold all sums already collected in escrow pending a final resolution. By opinion, dated November 1, 1979 and "Supplemental and Amended Conclusions of Law and Order" of January 23, 1980, the lower court found that the Officers had the right to revoke at will their checkoff authorization. The court concluded that any Officer who *filed a revocation* was entitled to the return of any sums held in escrow. Those Officers who merely informed the City that they were withdrawing from the Union were not entitled to the

withheld monies. All proceedings were stayed pending the outcome of this appeal.[1]

Both parties have appealed. The Union argues that it is the exclusive bargaining agent of the Fire Department and that the 1976 arbitration award limited the time and manner for revoking the checkoff authorization. It contends that as the exclusive representative it is entitled to the dues withheld. The Officers contend that the only issue before the court was whether the City could continue to withhold the Union dues. They argue, that since they had effectively revoked the authorization for the checkoff, the City could no longer withhold the dues. The controversy devolves to whether the initial authorization sets forth the controlling revocation procedure or whether the subsequent arbitration award incorporated and modified the authorization cards. There is no claim here that the attempted revocations were effective under the arbitration award; such an attempt would clearly have been unsuccessful as the bargaining unit was not apprised of the attempted revocations. See: *Associated Press v. N.L.R.B.*, 492 F.2d 662 (D.C.Cir.1974).

. We may properly look to private sector and Federal cases for guidance where there is "no meaningful difference" between the Public Employe Relations Act (PERA), 43 P.S. § 1101.201 et seq. and National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. *Burse v. Com. Pa. Labor Relations Bd.*, 56 Pa. Commonwealth Ct. 555, 559, 425 A.2d 1182, 1184 (1981). Here at issue is a checkoff provision. PERA provides for such check offs;[2] in the private sector,

1. This appeal is properly before us, as it was properly before the lower court, as, the Pennsylvania Labor Relations Board refused to exercise jurisdiction over the matter and the issue to be resolved is a contractual one. See *Hollinger v. Department of Public Welfare,* 469 Pa. 358, 365 A.2d 1245 (1976).

2. 43 P.S. § 1101.705 Dues deductions, maintenance of membership; subjects of bargaining
Membership dues deductions and maintenance of membership are subjects of bargaining with the proviso that as to the latter, the payment of dues and assessments while members, may be the only requisite employment condition.
1970, July 23, P.L. 563, No. 195, art. VII, § 705.

both the Pennsylvania Labor Relations Act (PLRA)[3] and
the Labor Management Relations Act[4] (LMRA) provide for
dues checkoffs. Act III, 43 P.S. § 217.1 et seq. grants the
right of collective bargaining to police and firefighters.
However, Act III does not explicitly address the question of
dues checkoffs. While Act III is to be read in pari materia
with the PLRA, *Pa. Fire Of. Ass'n v. Labor Rela. Bd.*, 470
Pa. 550, 369 A.2d 259 (1977), PERA should not be read in
pari materia with Act III. *Geriot v. Council of Borough of
Darby*, 491 Pa. 63, 417 A.2d 1144 (1980). We find it
unnecessary, for the purpose of this appeal, to attempt to
unravel the differences, and the interrelationships, of the
various statutes. It suffices to note that, on a general
level, we perceive no material differences, which would
affect our reliance, in this appeal, on both private and public
sector experiences. There has developed a body of common
law applicable to the current situation.

When reviewing the cases from the various jurisdictions
we come to the conclusion that under the facts of this case,

3. 43 P.S. § 211.6(1) It shall be an unfair labor practice for an
employer
(f) To deduct, collect, or assist in collecting from the wages of
employes any dues, fees, assessments, or other contributions payable
to any labor organization, unless he is authorized so to do by a
majority vote of all the employes in the appropriate collective bargain-
ing unit taken by secret ballot, and unless he thereafter receives the
written authorization from each employe whose wages are affected.

4. 29 U.S.C. § 186:
(a) It shall be unlawful for any employer or association of employ-
ers or any person who acts as a labor relations expert, adviser, or
consultant to an employer or who acts in the interest of an employer
to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or
other thing of value—
\* \* \* \* \* \*
(c) The provisions of this section shall not be applicable ...
\* \* \* \* \* \*
4. with respect to money deducted from the wages of employees in
payment of membership dues in a labor organization: *Provided,* That
the employer has received from each employee, on whose account
such deductions are made, a written assignment which shall not be
irrevocable for a period of more than one year, or beyond the
termination date of the applicable collective agreement, whichever
occurs sooner; ....

the parties' actions should be governed by the revocation procedure set forth in the authorization card.

There is a "historically recognized ... distinction between union membership and due deduction agreements characterizing the latter as a simple contract between employee and employer...." *Burse*, 56 Cmwlth. Ct. at 559, 425 A.2d at 1184. See also: *Felter v. Southern Pacific Co.*, 359 U.S. 326, 79 S.Ct. 847, 3 L.Ed.2d 854 (1959); *Peninsula Shipbuilders' Ass'n v. N.L.R.B.*, 663 F.2d 488 (4th Cir.1981); *N.L.R.B. v. Atlantic Printing Specialties*, 523 F.2d 783 (5th Cir.1975); *Associated Press v. N.L.R.B.*, 492 F.2d 662 (D.C.Cir.1974); and *Bradley v. Local 119, International U. of Electrical R & M Workers*, 236 F.Supp. 724 (E.D.Pa. 1964). Such checkoff arrangements are administrative conveniences provided for the benefit of the employees. *Felter*, supra; *Anheuser-Bush v. International Broth. of Teamsters*, 584 F.2d 41 (4th Cir.1978); *Atlantic Printing*, supra; and *Burse*, supra.

■ "[I]t is only by virtue of the authorizations that the Company is empowered to deduct union dues .... And to the extent that the Company failed to comply with the express terms of the authorization, the amount of any wrongful deductions must be remitted ...." *Hays v. Local No. 12, United Rubber Cork*, 523 F.Supp. 50 (N.D.Ala. (1981). Other courts have similarly held that the authorization card is the main requisite to a dues checkoff and therefore revocation could only be effected in conformity with the authorization card. *N.L.R.B. v. Shen-Mar Food Products, Inc.*, 557 F.2d 396 (4th Cir.1977); *Associated Press*, supra. When interpreting the language of such authorizations, we must view the facts and circumstances as they existed at the time the cards were executed. *Felter*, supra; *Atlantic Printing*, supra, and *Hayes*, supra.

Our research has revealed five cases which are sufficiently analagous to demonstrate that our disposition of this appeal is correct. Three are from the federal courts and two are the products of the courts of the Commonwealth of Pennsylvania.

In *Peninsula Shipbuilders' Ass'n*, supra, the authorization form required that revocation be submitted in writing. By subsequent contract, written revocation was to be submitted on the form provided by the Union and signed at the Union hall. The Fourth Circuit found that the authorization cards did not permit the Union to reject revocation for any reason and, in particular for failure to use the Union supplied form and to follow the Union desired procedure.

The Court of Appeals for the Fifth Circuit held that a subsequent contract could not abrogate the revocation procedure set forth in a previously executed authorization form. *Atlantic Printing*, supra. There the form allowed for revocation at the end of a one year period or at the expiration date of the agreement, otherwise the authorization was automatically renewed. Prior to the original expiration date, the contract was prematurely extended. The Union argued that the original contract had not terminated and therefore employees could not revoke their authorization. The court disagreed; employees had a right to revoke their authorization at the original expiration date.

The last federal case we wish to discuss in this regard is *Hays*, supra. The authorization form involved there provided that it was irrevocable for one year or until termination of the contract. If revocation was not made within one of the two escape periods, the authorization automatically renewed itself. The contract followed the language of the form and provided that it would renew itself unless one of the parties objected. The contract was continued on a day to day basis until a new agreement was reached. As of the time of execution of the authorizations the employees, knew the date the contract would expire therefore they had the right to revoke at that time irregardless of whether the agreement was extended.

Turning to cases from our courts, we find additional support. In *Phila. Fed. of Teachers v. Bd. of Ed.*, 458 Pa. 342, 327 A.2d 47 (1974), the issue faced by the court was whether the retroactive application of a contract continuing maintenance and dues deduction provisions could nullify a

resignation and revocation which occurred before the extension agreement was signed. The court found that the bargaining unit's and employer's choice of an effective date could not affect an employee's rights as there was no contract in effect at the time of revocation.

Similar reasoning was employed by this court in *Horn v. $1,950*, 184 Pa. Superior Ct. 321, 132 A.2d 376 (1957); affirmed, 392 Pa. 288, 140 A.2d 599 (1958). The signed authorizations provided for deductions provided there was a collective bargaining agreement in effect. Dues for the month preceding the expiration date were deducted after the termination of the contract. This court held that the clear language of the authorization did not permit deductions subsequent to the end of the contract.

■ We are persuaded that in this case, under the signed authorizations for dues deduction, the officers could, at will, by written notice to the City, revoke the City's power to make such deductions. Just as employee union members, must adhere to the procedure set forth in the authorizations, see, *Amalgamated Meat Cutters v. Shen-Mar Food Pro.*, 405 F.Supp. 1122 (W.D.Va.1975); and *United Electrical R & M Wkrs., v. Westinghouse Elec. Corp.*, 345 F.Supp. 274 (W.D.Pa.1972), so must the Union and employer adhere to the endorsed authorization. Here the dues' revocations were in accordance with the Union supplied forms; the forms did not require notice to the Union; the attempts to revoke were effective. However, any officer who relied on his resignation from the Union to terminate his checkoff authorization without specifically filing a revocation did not successfully revoke his authorization in accordance with the form he had signed. See *Burse*, supra.

To properly and fully resolve this appeal we must address several other points raised by appellant.

■ The Union contends that the officers had notice of the arbitration award and therefore ratified by their silence and inaction, the dues checkoff provision therein. We disagree. While in certain limited circumstances silence or

inaction may result in an acceptance or ratification of a certain agreement, such is the exception. See *Cohen v. Johnson*, 91 F.Supp. 231 (M.D.Pa.1950); *Baum's Estate*, 274 Pa. 283, 117 A. 684 (1922); Wiliston on Contracts, Third Edition Section 91 et seq.; and Restatement, Second, Contracts § 69. Under the circumstances of this case, silence or inaction could not abrogate the initial authorization forms.

■ As previously discussed the checkoff authorization is an agreement between the individual employee (not the employees as a single body) and the employer. In fact, 29 U.S.C. § 186 and 43 P.S. 211.6(1) both require that, for a checkoff to be effective, each employe whose wages are affected must individually sign an authorization. The collective bargaining agreement itself recognizes this by providing for the deduction of those "who individually request in writing that such deductions be made." Therefore, we find it would not be appropriate in this context, to allow an individual's consent to be overriden by the language of a subsequent collective bargaining agreement or award.

The Union also contends that both the City and the Officers are bound by the collective bargaining agreement. It contends that under Act III § 7, the City must amend its ordinances to provide for revocation in accordance with the contractual provision. See 43 P.S. § 217.7. At the time in question, Title 19 of the Philadelphia Code § 203 provided:

> Authorization for Payroll Deductions shall be made by employees in writing upon forms prescribed and furnished by the Director of Finance, and authorized deduction shall be made at such time in such manner as the Director of Finance may establish. *An authorization for payroll deductions may be revoked in writing by the authorizing employee in such manner as the Director of Finance may establish.*
> (Emphasis supplied)

Thus, the Union contends the City should have amended § 203 to provide for revocation in accordance with the

limitations of the agreement and no other method was proper.

 Appellant Union again is overlooking the individual nature of the dues checkoff authorizations. Whether a checkoff provision is a bargainable issue or not is not the question here; nor is the City's responsibility to amend its ordinances to implement the agreement the focus. We expressly decline to comment on either point. Instead, we rely on our early discussion where we held that the language of the authorization itself must be abided by. The parties may not convert an individual authorization into a collective one. To reiterate our earlier position: but for the individual officer's direction dues could not be withheld; therefore, neither the City nor the Union could require revocation by a means inconsistent with the authorizations.

Order affirmed.[5]

PRICE, J., did not participate in the consideration or decision of this case.

---

5. In resolving this appeal we have addressed the contentions raised in the cross appeal hence no further elaboration is necessary.