City of Pittsburgh, Appellant *v.* Fraternal Order of Police, Fort Pitt Lodge No. 1, Appellee.

Fraternal Order of Police, Fort Pitt Lodge No. 1, Appellant *v.* City of Pittsburgh, Appellee.

Argued March 13, 1985, before President Judge CRUMLISH, JR., Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Richard J. Joyce*, Assistant City Solicitor, with him, *D. R. Pellegrini*, City Solicitor, for appellant/appellee, City of Pittsburgh.

*Bryan Campbell*, with him, *Anthony C. Busillo*, for appellee/appellant, Fraternal Order of Police, Fort Pitt Lodge No. 1.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., January 13, 1986:

The City of Pittsburgh (City) and the Fraternal Order of Police, Fort Pitt Lodge No. 1 (FOP) entered into binding arbitration pursuant to Act 111[1] in 1983. The City appealed certain provisions of the arbitrator's award to the Allegheny County Common Pleas Court, which upheld paragraph nos. 2, 12, and 14 of the award but struck paragraph nos. 10 and 13. The parties cross-appeal to this Court. We affirm the trial

---

[1] Act of June 24, 1968, P.L. 237, 43 P.S. §§217.1-217.10.

court's decision in paragraph nos. 10, 12, 13 and 14, but reverse in paragraph no. 2.

Our scope of review of an arbitration award under Act 111 is restricted to questions of law and the regularity of the proceedings. *City of Erie, Pa. Appeal*, 74 Pa. Commonwealth Ct. 245, 459 A.2d 1320 (1983); *appeal dismissed*, 505 Pa. 505, 481 A.2d 610 (1984).

The City contends that the trial court erred in holding that paragraph no. 2 did not create an illegal agency shop. Paragraph no. 2 **provides:**

*Agency Shop and Dues Check-Off:*

(a) No member of the bargaining unit shall be required to become or remain a member of the Union, *but any member* of the bargaining unit *who elects not to join* or remain a member of the Union *shall be required to pay* the Union an amount equal to 75% of the monthly and/or yearly dues which are payable to the Union by members of the Union. (Emphasis added.)

The City argues that a literal reading of this provision makes the payment of dues by non-union members a condition of employment and would require dismissal of non-complying employees, which is contrary to Section 7 of what is commonly known as the Policemen's Civil Service Statute.[2] We agree.

An agency shop provision is within the scope of an Act 111 arbitration award. *Commonwealth v. State Conference of State Police Lodges*, 88 Pa. Commonwealth Ct. 356, 489 A.2d 317 (1985). The essence of an agency shop is a *requirement* that all employees, union and non-union alike, pay a service fee to the union *as a condition of employment* in order to help defer bargaining and contract administration expenses. *Burse v. Pennsylvania Labor Relations Board*, 56 Pa. Commonwealth Ct. 555, 425 A.2d 1182 (1981).

---

[2] Act of August 10, 1951, P.L. 1189, *as amended*, 53 P.S. §23537.

However, if an agency shop clause requires the government employer to perform any duty which is specifically prohibited by some controlling statutory authority, it is illegal. *State Conference of State Police Lodges.*[3]

We read paragraph no. 2 as explicitly requiring all non-union members to pay a union fee as a condition of employment. Any provision in an award of an arbitrator pursuant to Act 111 must of necessity involve the "terms and conditions" of employment.[4] As a condition of employment, the provision "contemplates the discharge from county employment of any [policeman] who is not in good-dues-standing with a union to which he may or may not belong." *Allegheny County Firefighters,* 7 Pa. Commonwealth Ct. at 86, 299 A.2d at 62. In this posture, the provision conflicts with the Policemen's Civil Service Statute by requiring discharge for reasons which may not constitute "just cause" and, in so doing, usurps the authority of a trial court or the mayor to determine the penalty for failure to comply. *State Conference of State Police Lodges.* We strike paragraph no. 2 from the award.

The City next contends that paragraph no. 12 of the award is contrary to Section 701 of the Pittsburgh Home Rule Charter[5] because it makes seniority an ele-

----

[3] *See also Dauphin County Technical School Education Association v. Dauphin County Area Vocational-Technical School Board,* 24 Pa. Commonwealth Ct. 639, 357 A.2d 721 (1976), *aff'd on other grounds,* 483 Pa. 604, 398 A.2d 168 (1978) ; *Allegheny County Firefighters, Local 1038 v. Allegheny County,* 7 Pa. Commonwealth Ct. 81, 299 A.2d 60 (1973).

[4] Section 1 of Act 111, 43 P.S. §217.1.

[5] Pittsburgh Home Rule Charter, Article VII, §701, provides:
701. PERSONNEL SYSTEM
    The Mayor shall propose a personnel system to Council for approval and adoption by ordinance. The system shall be uniform for all employees. It shall include written pro-

ment of merit examinations. Paragraph no. 12 provides:

> *Promotional Examinations:* Employees who take promotional examinations shall have 1/2 point added to their actual examination scores for each complete year served by them in the Department of Police to a maximum of five (5) additional points at 10 or more complete years of service. Promotional candidates must have completed a minimum of six (6) years of service at the time of such examination in order to receive a length of service credit.

Section 701 of the Charter clearly permits merit promotions to be a proper subject for collective bargaining. Moreover, Section 6 of the Policemen's Civil Service Statute[6] and the Charter permit seniority to be a consideration in granting promotions. *See Mc-Grath v. Staisey*, 433 Pa. 8, 11, 249 A.2d 280, 281 (1968).[7] The numerical crediting of seniority does not violate the Charter or the Civil Service Statute. *See Sitarik v. Civil Service Commission of Pittsburgh,*

---

cedures for appointment, promotion and removal based on merit and fitness as demonstrated by examination or other evidence of competence, with due consideration for seniority insofar as permitted by law. Appointments, promotions and removals of subordinate officers and employees within major administrative units shall be made by the major administrative unit head on the basis of the system adopted. The right of collective bargaining for employees is recognized in accordance with law.

[6] 53 P.S. §23535. This section is made part of the Pittsburgh Home Rule Charter by §180.06 of the Pittsburgh Code.

[7] In *McGrath* our Supreme Court held that only written examination results could be used in promoting county police officers under Section 1516 of the Second Class County Code, Act of July 28, 1953, P.L. 723, *as amended*, 16 P.S. §4516. The majority opinion, however, contrasted the promotion requirements in Section 6 of the Policemen's Civil Service Statute with the County Code promotion provision.

76 Pa. Commonwealth Ct. 29, 462 A.2d 966 (1983). We affirm the validity of paragraph no. 12.

The City further contends that the trial court erred in upholding paragraph no. 14 of the award, which provides:

> *National Fraternal Order of Police President:* Any member of the bargaining unit who shall be elected to the office of National President of the Fraternal Order of Police shall be granted upon request a maximum of ten (10) days paid leave in order to attend to the duties of his office.

It argues that the FOP did not specifically request this award, that it does not rationally relate to an officer's duty and, in effect, requires the City to lend financial support to the union, which is a violation of Section 6 of the Pennsylvania Labor Relations Act (PLRA).[8]

There is no statutory authority or Home Rule Charter provision prohibiting the City from granting leaves of absence to the national FOP president for attendance at professional meetings. The provision is not only contained within the scope of the demands filed by the FOP[9] but it bears a rational relationship

---

[8] Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §211.6, provides:

§211.6 UNFAIR LABOR PRACTICES

(1) It shall be an unfair labor practice for an employer—

. . . .

(b) To dominate or interfere with the formation or administration of any labor organization or contribute financial or other material support to it: Provided . . . an employer shall not be prohibited from permitting employes to confer with him during working hours without loss of time or pay.

[9] F.O.P. EXECUTIVE MEMBERS LEAVE

1. The person duly designated in the capacity of President of the F.O.P. shall be allowed up to 1,040 work hours per

to a police officer's duty because it exposes a department to innovative techniques of law enforcement and sound administrative practices which are the normal and customary topics covered in such educational conferences. *Federation of Police, E. B. Jermyn Lodge No. 2 v. City of Scranton,* 26 Pa. Commonwealth Ct. 513, 364 A.2d 753 (1976). It is clear to us that the City is not subsidizing the union but merely is providing paid leave time for the commendable purpose of improving the department's efficiency. We affirm the validity of paragraph no. 14.

The FOP contends that the trial court erred in striking paragraph no. 10 because the subject of a legal defense fund is within the scope of an arbitration award and because the City should have the right

---

year to engage in F.O.P. related activities pursuant to, and consistent with the Agreement or Contract and to afford meetings with the City-Council, Civil Service Commission and others when called upon, and to conduct the business of the F.O.P. Time used for this purpose in excess of 1,040 hours shall be at the expense of the F.O.P. and the F.O.P. shall reimburse the City at the President's hourly rate of pay. The City will pay the President's full-time fringe benefits.

2. Members of the Executive Board of the F.O.P. shall have a bank of up to 450 hours of paid released time which may be used for meetings of the Executive Board meetings of the general membership of the F.O.P. and preparations for negotiations or arbitrations.

3. A Member of the Executive Board of the F.O.P. will not be able to use any of the above hours in Section 2 without a written notice from the President of the F.O.P. and a letter sent to the Superintendent of Police, 24 hours written notice in advance stating dates and time.

4. Members of the F.O.P. Executive Board will be permitted a total of (72) work days paid leave to attend one annual F.O.P. Convention yearly, 12 Members—6 days each.

5. Delegates who are not members of the Executive Board will be permitted a total of 6 days paid leave to attend one annual F.O.P. Convention yearly.

to determine which civil judgments against policemen are to be paid from city funds.

Paragraph no. 10 provides:

> *Legal Representation:* The City shall pay the amount of any final civil judgment or verdict rendered against an employee following a determination by the City that that employee acted reasonably and in the good faith belief that his actions were lawful and proper under the circumstances.

We agree with the trial court that there is no specific statutory authority which permits cities of the second class to engage in collective bargaining on this issue. Moreover, Section 8548(a) and (b) of the Political Subdivision Tort Claims Act[10] expressly requires a

---

[10] 42 Pa. C. S. §8548(a) and (b), provide:

(a) *Indemnity by local agency generally.*—When an action is brought against an employee of a local agency for damages on account of an injury to a person or property, and he has given timely prior written notice to the local agency, and it is judicially determined that an act of the employee caused the injury and such act was, or that the employee in good faith reasonably believed that such act was, within the scope of his office or duties, the local agency shall indemnify the employee for the payment of any judgment on the suit.

(b) *Indemnity by employee generally.*—No employee of a local agency shall be liable to the local agency for any surcharge, contribution, indemnity or reimbursement for any liability incurred by the local agency for damages on account of an injury to a person or property caused by an act of the employee which was within the scope of his office or duties or which he in good faith reasonably believed to be within the scope of his office or duties. No employee of a local agency shall be liable to the local agency for any surcharge, contribution, indemnity or reimbursement for any expenses or legal fees incurred by the local agency while defending the employee against a claim for damages on account of an injury to a person or property caused by an act of the employee.

judicial determination of whether an employee acts in good faith and within the scope of his employment. The City may not elect those officers whom it chooses to indemnify. We affirm the trial court's elimination of this provision.

Finally, the FOP contends that the trial court erred in striking paragraph no. 13 of the award since the provision merely provides a procedure for periodic review of assignments and does not usurp the superintendent's discretionary authority to promote and demote detectives. Paragraph no. 13 reads:

(a) An employee who is transferred to the Detective Bureau shall be recommended to a police merit board for assignment to Detective Class III after serving a maximum of ninety days in the Detective Bureau from the date of transfer.

(b) An employee who has served as a Detective Class III for a maximum period of twelve months shall be recommended to a police merit board for assignment to Detective Class II.

(c) An employee who has served as a Detective Class II for a maximum of twelve months shall be recommended to a police merit board for assignment to Detective Class I.

(d) Whenever for any reason with the discretion of the Superintendent of Police, it is deemed necessary or desirable to reassign any employee who has been classified as a Detective Class III, II or I to his former civil service position, the employee shall have the right to be advised in advance of such intended action as well as the reason or reasons therefor. Such employee shall have the right to respond to such writing either personally or through his union representative.

We agree with the trial court that this provision, requiring a mandatory promotion review, exceeds the City's statutory powers. Section 6.1 of the Policemen's Civil Service Statute[11] places no limitation on

[11] This section, 53 P.S. §23536, provides:

In addition to existing powers of promotion in the bureau of police, cities of the second class are hereby authorized to create such additional classes of detectives as they shall determine to be designated as Detective Class I, Detective Class II and Detective Class III. Such classes of detectives shall carry salaries which shall not be less than the maximum of salaries of patrolmen and not greater than the minimum salaries of detectives presently existing in cities of the second class, and shall consist of members of the police bureau who have been assigned to such additional classes of detectives because of a particular aptitude for investigation, outstanding meritorious service, or unusual and exceptional bravery.

Assignments to the several additional classes of detectives shall be made in the following manner. Whenever a member of the police bureau is recommended by his superior officer for assignment to one of the additional classes of detectives authorized in this section a police merit board shall be convened.

The board shall be constituted in each instance in the same manner as police trial boards authorized by law. The police merit board shall hear such evidence as may be pertinent to the case and shall thereafter make its recommendation. Such recommendation shall then be forwarded to the superintendent of police who shall endorse thereon his approval or disapproval of the board's finding. Thereafter the said report with the endorsement of the superintendent of police shall be submitted to the director of the department of public safety who shall take such action thereon as in his discretion he deems proper. In case of such assignments to an additional detective classification the member of the bureau of police so assigned shall retain his civil service status under the civil service laws then in effect. Whenever for any reason within the discretion of the director of the department of public safety it is deemed necessary or desirable to reassign any such member to his former position the said director of the department of public safety shall have the right to make such reassignment. Civil

the superintendent's authority to reassign detectives or to advise them of their reassignments, and the mandatory recommendation process circumvents the legislatively enacted plan of superior officer recommendations.

We reverse that portion of the trial court's order which upholds paragraph no. 2; we affirm the remainder of the order as to paragraphs nos. 10, 12, 13 and 14.

### Order

The order of the Allegheny County Common Pleas Court, No. SA 844 of 1982 dated August 25, 1983, is affirmed as to paragraphs nos. 10, 12, 13 and 14 of the arbitration award and reversed as to that portion which upholds paragraph no. 2 of the award.

---

service commissions of cities of the second class may, in their discretion, make such rules and regulations for grades, merits, or credits, concerning the positions authorized by this section and relating to promotional examinations for such positions in the bureau of police as they may see fit.